Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

# UNITED STATES DISTRICT COURT
## for the
### Central District of California
### Western Division

FILED
2025 OCT 29 PM 12: 17
CLERK U.S. DISTRICT
LOS ANGELES
BY: rsm

| | |
|---|---|
| SARAH FARAGALLA, an individual and SARAH FARAGALLA INC., a California S-Corporation | Case No. **2:25-CV-10393-JAK-AJRx** *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* (Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) | Jury Trial: *(check one)* ✔ Yes ☐ No |
| -v- See Attached | |
| *Defendant(s)* (Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.) | |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(Non-Prisoner Complaint)

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## I. The Parties to This Complaint

**A. The Plaintiff(s)**  See Attached for 2nd Plaintiff

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Sarah Faragalla, an individual |
| Address | 345 S Elm Dr, 107 |
| | Beverly Hills, CA 90212 |
| | *City  State  Zip Code* |
| County | Los Angeles |
| Telephone Number | 310-595-4386 |
| E-Mail Address | sarahfaragalla@gmail.com |

**B. The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Ebony Media Group, LLC |
| Job or Title *(if known)* | |
| Address | 251 Little Falls Dr |
| | Wilmington, DE 19808 |
| | *City  State  Zip Code* |
| County | New Castle County |
| Telephone Number | |
| E-Mail Address *(if known)* | |

☐ Individual capacity  ☑ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | 1145 Holdings, LLC |
| Job or Title *(if known)* | |
| Address | 251 Little Falls Dr |
| | Wilmington, DE 19808 |
| | *City  State  Zip Code* |
| County | New Castle County |
| Telephone Number | |
| E-Mail Address *(if known)* | |

☐ Individual capacity  ☑ Official capacity

Defendant No. 3
    Name: Bridgeman Foods Inc., also known as Manna Inc.
    Job or Title *(if known)*:
    Address: 251 Little Falls Dr
    City: Wilmington    State: DE    Zip Code: 19808
    County: New Castle County
    Telephone Number:
    E-Mail Address *(if known)*:

    [ ] Individual capacity    [✔] Official capacity

Defendant No. 4
    Name: Karen M. Campbell
    Job or Title *(if known)*: in her individual capacity and as counsel for Ebony Media Group, LLC
    Address: 3309 Collins Ln
    City: Louisville    State: KY    Zip Code: 40245
    County: Jefferson County
    Telephone Number: 502-272-2186
    E-Mail Address *(if known)*: kcampbell@bfcompanies.com

    [✔] Individual capacity    [X] Official capacity

II.  **Basis for Jurisdiction**   See Attached

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

   A.  Are you bringing suit against *(check all that apply)*:

       [ ] Federal officials (a *Bivens* claim)

       [ ] State or local officials (a § 1983 claim)

   B.  Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

   C.  Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

D. Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

III. **Statement of Claim**

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. Where did the events giving rise to your claim(s) occur?

All events giving rise to these claims occurred in Los Angeles County, including work performed from my home office in Pacific Palisades, a venue walkthrough at Milk Studios in Hollywood, an in-person meeting with Ebony Media Group, LLC, Media Futures Group and Google at Andaz West Hollywood and the Power 100 event itself.

B. What date and approximate time did the events giving rise to your claim(s) occur?
The events giving rise to my claims occurred between March 16, 2022, when Ebony Media Group, LLC first contacted me regarding my interest in and availability to work on Power 100 and November 16, 2022, when Karen M. Campbell made demonstrably false statements about my work product.

C. What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*
1. Plaintiff Sarah Faragalla is the founder and sole owner of Plaintiff Sarah Faragalla Inc., a California S-Corporation.

2. Ebony Media Group, LLC ("EBONY") is owned by 1145 Holdings, LLC, which is owned by Bridgman Foods, Inc., also known as Manna Inc.

3. Karen M. Campbell serves as lead in-house legal counsel for EBONY, general counsel for Manna Inc. and is the registered agent for both 1145 Holdings, LLC and Manna Inc.

4. On or around March 16, 2022, EBONY contacted Plaintiff regarding her interest in and availability to provide strategic creative and experiential design services for EBONY's tentpole gala, Power 100.

**See Attached**

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## IV.  Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

Persoanlly, this experience was profoundly traumatic for Plaintiff. She has a documented diagnosis of Complex PTSD (CPTSD) and has been in therapy for over a decade. The exploitation of her work, concealment of her identity and public erasure by Defendants triggered severe symptoms that forced her to suspend legal action at the time and resume intensive therapy.

Professionally, the impact was equally devastating. Prior to working with EBONY, Plaintiff built a decade-long career directing large-scale branded experiences for global companies. She was recognized as a top experiential creative known for humanizing complex technologies. Accepting work with EBONY was already a strategic departure from that tier. Following this experience, Plaintiff became so traumatized and risk-averse that she abandoned national and global brand work altogether and redirected her efforts toward local nonprofits. This shift fundamentally altered the trajectory of her career, her professional reputation and her earning capacity.

Plaintiff also lost a promising professional relationship with Google. Despite her direct role in securing Google's sponsorship and plans to continue to work together outside of EBONY's Power 100 event, Plaintiff's email request for a follow-up conversation with Google went unanswered, compounding the emotional distress and reinforcing the long-term reputational damage.

Years later, Plaintiff continues to suffer ongoing psychological and professional harm as a direct result of Defendants' conduct.

## V.  Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

$45,000 for work in Presentations 1–3 misappropriated by Defendants
$13,500 in prejudgment interest on the $45,000 for Presentations 1–3, calculated at 10% annually over three years
$55,000 for work in Presentations 4–6, reflected in invoice numbers 92622, 10322 and 101322
$63,000 in lost profits from the Google Pixel activation, based on Plaintiff's stated and agreed-upon fees for a $150,000 project budget
$35,268 in accrued interest on unpaid invoices and the Google Pixel activation, calculated at a 10% annual rate per Plaintiff's stated terms
$65,000 for securing Google's $1.3 million sponsorship, based on a 5% commission
$750,000 in statutory damages for willful copyright infringement, based on $150,000 per violation (five known violations)
$1,670,000 in lost opportunity to work on other projects between May and October 2022
$90,000 in lost opportunity to execute the Google Pixel activation at the Ryan Coogler Q&A event
$4,000,000 in lost opportunity to execute an expanded version of the Google Pixel activation at the 2023 Super Bowl
Emotional distress, reputational harm, potential defamation, recoverable attorney's fees and punitive damages.
Total damages exceed $6,786,768. Plaintiff also requests any additional relief the Court deems just and appropriate.

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 10/29/2025

Signature of Plaintiff: [signature]
Printed Name of Plaintiff: Sarah Faragalla

### B. For Attorneys

Date of signing:

Signature of Attorney:
Printed Name of Attorney:
Bar Number:
Name of Law Firm:
Address:
            City            State            Zip Code
Telephone Number:
E-mail Address:

Print    Save As...    Add Attachment    Reset

ATTACHMENT TO COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

Page 1 of 6

DEFENDANTS

EBONY MEDIA GROUP, LLC; 1145 HOLDINGS, LLC; BRIDGMAN FOODS INC. (A.K.A. MANNA INC.); KAREN M. CAMPBELL, in her individual capacity and as counsel for EBONY MEDIA GROUP, LLC and DOES 1 to 10 inclusive

Page 2 of 6

I. The Parties to This Complaint

A. The Plaintiff(s)

Sarah Faragalla Inc., a California S-Corporation

345 S Elm Dr, 107

Beverly Hills, CA 90212

Page 3 of 6

II. Basis for Jurisdiction

Plaintiff brings this action under federal law, including but not limited to: 17 U.S.C. §§ 106, 501, 504(c)(2) (Copyright Act), 18 U.S.C. § 1836 (Defend Trade Secrets Act), 15 U.S.C. § 1125(a) (Lanham Act) and 42 U.S.C. § 1981 (Civil Rights Act). Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (jurisdiction over copyright, trademark and unfair competition claims).

Page 4 of 6

III. Statement of Claim

C. What are the facts underlying your claim(s)? (For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)

5. Between May 16, 2022 and October 13, 2022, Plaintiff was engaged by EBONY as their experiential partner for Power 100. Over the course of these five months, Plaintiff shared trade secrets and developed and delivered eight strategic, creative and technical presentations—five of which contained copyright-registered intellectual property. Plaintiff's work was directly responsible for securing Google's $1.3 million sponsorship for Power 100.

6. The winning concept, developed by Plaintiff and presented to Google on behalf of EBONY, was an original experiential activation designed to showcase the Pixel 7's Real Tone software. The activation featured an immersive "portal" entrance and three distinct photo moments where guests would be photographed on Pixel devices and receive branded images in real time via a custom technical solution. The experience preserved guest privacy while enabling immediate social sharing. This seamless branded concept—designed by Plaintiff—formed the foundation of the value proposition Google believed it was sponsoring.

7. Plaintiff designed and presented the Pixel activation as a scalable, evolving branded experience, not limited to a one-off installation at Power 100. Google was enthusiastic about its longevity and adaptability and discussed plans with Plaintiff—unrelated to EBONY—to take the activation to a Wakanda Forever

Q&A with director Ryan Coogler in November 2022 and then expand the experience to include a larger build and more complex tech component for the Super Bowl in February 2023.

8. At the outset of the project, Plaintiff was asked to submit her rates and fees, which she included in her first presentation to EBONY. Plaintiff also completed EBONY's New Vendor Form, where she provided her payment terms. Plaintiff was told that a purchase order would be opened and submitted a W-9 and four invoices for her preliminary work. Although Plaintiff's terms were net-5, she was initially told she would be paid on a net-30 basis. However, she was never paid for any of her work.

9. Plaintiff signed the NDA provided by EBONY, but EBONY never countersigned it. Despite Google's request for direct communication with Plaintiff during research and development, EBONY refused to allow it. To develop the custom technology required for the activation, Plaintiff needed access to a Pixel SME, a Best Practices call with Google and Pixel 7 devices on a defined timeline—all of which EBONY promised to provide Plaintiff in front of Google, but never delivered. Without confirmation of the budget or access to the promised resources and information, Plaintiff was unable to draft or execute a formal contract.

10. Two weeks before the event, EBONY admitted it had failed to meet the development timeline for the custom technology and proposed a simplified "Plan

B" version of the activation that did not involve the tech. Plaintiff agreed to proceed on four conditions: (1) payment of outstanding invoices, (2) confirmation of the project budget, (3) access to the required resources by the following day and (4) written approval from Google confirming its understanding and acceptance of the change—given the custom technology was central to the value proposition of its $1.3 million sponsorship. EBONY failed to meet any of these conditions, instructed Plaintiff to stop working and assured her that none of her work would be used at Power 100.

11. On October 25, 2022—four days before Power 100—Google contacted Plaintiff directly with a last-minute request to expand the branded photo overlays to the second and third photo activations. The outreach confirmed that Google still believed Plaintiff was leading the activation and expected the complete experience Plaintiff had developed and presented, including the custom technology enabling real-time branded image sharing. This communication demonstrated that EBONY had not informed Google of Plaintiff's removal from the project on October 13, 2022 and had instead—by strategic omission or false and misleading representations—allowed Google to continue believing that Plaintiff remained affiliated with and responsible for the project. Google's message further confirmed that EBONY intended to proceed with Plaintiff's intellectual property without her knowledge, consent, credit, or compensation—despite having previously assured Plaintiff that none of her work

would be used.

12. Plaintiff's trade secrets—shared in good faith over five months and eight presentations—included an original marketing framework outlining pre-, during- and post-event brand engagement. This proprietary strategy was part of Plaintiff's fourth presentation, which was copyright-registered. EBONY misappropriated this protected material by screenshotting the slide containing the marketing plan, removing Plaintiff's logo and pasting it into their internal Master Event Plan, presenting it as their own. This was done without Plaintiff's knowledge, consent or attribution and was discovered by Plaintiff on October 4, 2022.

13. On October 29, 2022, at Power 100, EBONY further misappropriated Plaintiff's trade secrets and intellectual property by activating an installation for Google that included core experiential elements lifted directly from Plaintiff's presentations: a portal-style entryway, four distinct stylized photo environments and specific brand ambassador styling. Much of this material was copyright-registered and EBONY had assured Plaintiff that none of her work would be used. Nonetheless, EBONY publicly credited themselves for these proprietary design and guest experience elements, without crediting or compensating Plaintiff.

14. In addition, EBONY failed to execute the experience as intended. The activation diverged significantly from the version Plaintiff developed and

and presented to Google. Two of the photo environments were pulled from earlier concepts never intended for this activation and never shown to or approved by Google. One key experience—a custom waterfall photo moment—was eliminated entirely. Rather than delivering the promised custom technology enabling real-time, branded digital image sharing via Pixel devices, EBONY printed low-resolution images on paper, manually applied the branding and affixed them to a wall made of hedges. This abandoned the core value proposition presented to Google and severely compromised the guest experience.

14. On October 4, 2022, when Plaintiff discovered EBONY's Master Event Plan, she not only saw that her marketing strategy had been misappropriated, but also that her name and contributions were entirely omitted from the section discussing the Google activation. Plaintiff had worked for five months as EBONY's experiential partner, the activation was based entirely on her intellectual property and EBONY's CEO, Eden Bridgeman Sklenar, reassigned Plaintiff"s internal point of contact on October 5, 2022. Despite all of this, EBONY falsely claimed the activation was being created internally. Throughout the document, only Black partners were acknowledged, including the planned hiring of a "local Black chef" whose identity had not yet been determined—but whose race had—as well as the selection of a Black-owned and staffed PR agency. The consistent exclusion of Plaintiff's name and identity, while race was explicitly cited as a selection criterion for other vendors, indicates that EBONY never intended to credit or

compensate Plaintiff and instead prioritized racial identity in determining attribution and access to opportunity.

15. On October 29, 2022, at the Power 100 event, EBONY's in-house Creative Director, Rashida Morgan-Brown, a Black woman, publicly claimed credit for the Google activation that Plaintiff had created. Furthermore, execution of the activation was attributed to "Black woman owned" Idlewild—the company EBONY hired to produce Plaintiff's work. While Plaintiff's identity and contributions were concealed throughout the five month development period, EBONY publicly celebrated and promoted Black authorship and ownership of the activation—despite the fact that the concepts, strategy and creative were Plaintiff's trade secrets, intellectual property and copyrighted work. This deliberate racial substitution denied Plaintiff the right to benefit from her work and reflects discriminatory decision-making in the attribution of credit and distribution of opportunity.

16. On November 16, 2022, in response to Plaintiff's demand for payment, Karen M. Campbell, EBONY's lead in-house counsel, issued a letter containing multiple false and materially misleading statements designed to drastically minimize Plaintiff's contributions and justify EBONY's non-payment. Campbell falsely claimed that Plaintiff had worked with EBONY for only "several weeks" and had merely submitted "pitch decks" for Google's consideration—when in fact Plaintiff was engaged for five months, developed eight formal presentations (none of which

were "pitch decks") and was directly responsible for securing Google's $1.3 million sponsorship.

Campbell further misrepresented that Google showed only "some interest" in Plaintiff's first presentation before selecting a different concept, despite the fact that Google never saw that initial presentation. The activation ultimately executed was based on concepts from Plaintiff's fourth presentation, which she developed and presented in person on October 4, 2022. Had Google chosen a different concept, they would not have contacted Plaintiff on October 25, 2022—four days before the event—requesting an update to the experience she had presented.

Campbell also falsely claimed that Plaintiff failed to deliver requested renderings, despite the fact that no such request appears in any communications with Google or EBONY. In the same letter, Campbell offered Plaintiff a $5,000 "gesture of goodwill" in exchange for signing a release—despite EBONY's unauthorized use of Plaintiff's trade secrets, intellectual property and copyrighted work and its false attribution of authorship to others. These misrepresentations reflect a deliberate attempt by Campbell to erase Plaintiff's role and rewrite the record after the fact, following Plaintiff's good-faith demand for compensation.